Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000071
18-JUN-2019
07:54 AM

NO. CAAP-16-0000071

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

HEALOHA CARMICHAEL, LEZLEY JACINTHO,
and NĀ MOKU AUPUNI O KOʻOLAU HUI,
Plaintiffs-Appellees/Cross-Appellees/Cross-Appellants,
v.
BOARD OF LAND AND NATURAL RESOURCES, SUZANNE CASE,
in her official capacity as Chairperson of the Board of Land and
Natural Resources, the DEPARTMENT OF LAND AND NATURAL RESOURCES,
Defendants-Appellees/Cross-Appellees/Cross-Appellants,
and
ALEXANDER & BALDWIN, INC., EAST MAUI IRRIGATION CO., LTD.,
and HAWAIIAN COMMERCIAL AND SUGAR CO.,
Defendants-Appellants/Cross-Appellees,
and
COUNTY OF MAUI, DEPARTMENT OF WATER SUPPLY,
Defendant-Appellee/Cross-Appellant/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-0650)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Chan and Hiraoka, JJ.)

The matter before us arises from a lengthy and complex
dispute over water rights in East Maui. On January 8, 2016, the
Circuit Court of the First Circuit (circuit court)[1] entered its
"Order Granting Plaintiffs' Motion for Partial Summary Judgment,
Filed October 21, 2015" (Order Granting Plaintiffs' MPSJ), in
favor of Plaintiffs-Appellees/Cross-Appellees/Cross-Appellants
Healoha Carmichael, Lezley Jacintho, and Nā Moku Aupuni O Koʻolau

_____

[1]     The Honorable Rhonda A. Nishimura presided.

Hui (Nā Moku) (collectively, Plaintiffs) and against Defendants-Appellants/Cross-Appellees Alexander & Baldwin, Inc. (A&B), East Maui Irrigation Co., Ltd. (EMI), and Hawaiian Commercial and Sugar Co. (HC&S) (collectively, A&B Defendants); Defendants-Appellees/Cross-Appellees/Cross-Appellants Board of Land and Natural Resources (BLNR), Suzanne Case, in her official capacity as Chairperson of BLNR, and the Department of Land and Natural Resources (DLNR) (collectively, State Defendants); and Defendant-Appellee/Cross-Appellant/Cross-Appellee County of Maui, Department of Water Supply (Maui County).[2] A&B Defendants appealed from the Order Granting Plaintiffs' MPSJ. Maui County, State Defendants, and Plaintiffs filed cross-appeals.

## I.  BACKGROUND

### A.  Factual Background

For over a century, A&B & EMI have diverted water from East Maui streams for use in sugar plantation operations. Effective July 1, 2000, DLNR issued four revocable month-to-month permits (Nos. S-7263, S-7264, S-7265, and S-7266) (the Revocable Permits) that gave A&B and EMI the "[r]ight, privilege, and authority for the development, diversion, and use of water" from four areas (Honomanū, Huelo, Ke'anae, and Nāhiku) (the License Areas) in East Maui.[3] Each permit expressly stated that it was issued pursuant to Hawaii Revised Statutes (HRS) § 171-58.

On May 14, 2001, while the Revocable Permits were in effect, A&B and EMI applied for a thirty-year lease of the License Areas (Lease Application). In the Lease Application, A&B and EMI also requested the "temporary continuation of the year-to-year revocable permit[s] for existing permittees (the Nahiku [Nāhiku] revocable permit to [A&B] and the Honomanu [Honomanū], Huelo and Keanae [Ke'anae] revocable permits to [EMI] for fiscal year 2001/2002) pending issuance of the lease."[4] By letter dated

_____

[2] A&B Defendants, State Defendants, and Maui County are collectively referred to herein as Defendants.

[3] The Honomanū, Huelo, and Ke'anae revocable permits were initially assigned to A&B and the Nāhiku revocable permit was initially assigned to EMI.

[4] In its Lease Application, A&B requested that the assignment of the License Areas in the interim permits be the opposite of that depicted in the original Revocable Permits. BLNR subsequently explained that "the issuance of

2

May 23, 2001, Nā Moku objected to the long-term disposition of water rights proposed in the Lease Application and requested a contested case hearing[5] pursuant to HRS chapter 91, which governs administrative hearings and procedures.

The Lease Application was included as a discussion item on the agenda for BLNR's May 25, 2001 public meeting. During that meeting, the administrator of DLNR's Land Division informed BLNR, with regards to the Lease Application, "that the long-term disposition process is subject to discussion, that there is going to be a[n HRS] Chapter 343 requirement, and that [A&B and EMI] will be required to prepare the necessary environmental documents." After a representative from A&B requested that the Lease Application be approved, Deputy Attorney General Dawn Chang clarified that "the only matter before the Board for action [was] the issuance of the 4 interim revocable permits. The long-term lease [was] listed on the agenda for discussion only and [could not] be acted on by the Board at [that] time." After hearing various members of the public present testimony on the issue, BLNR deferred action on the agenda item and granted a holdover permit to A&B and EMI on a month-to-month basis, pending the results of Nā Moku's contested case hearing (2001 Holdover Decision).[6]

The following year, in 2002, BLNR began the practice of reviewing in bulk the continuation of revocable permits

------

[the Revocable Permits] for the four [License Areas] are alternated annually between [A&B] and [EMI]" in order to address the one-year restriction on the disposition of temporary water rights imposed by HRS § 171-58(c).

[5] According to the parties' statements of related cases to this appeal, Nā Moku's contested case (DLNR File No. 01-05-MA) remains pending. The parties have also identified, as a related case, Nā Moku Aupuni O Ko'olau Hui v. Bd. of Land & Nat. Res., Civ. No. 14-1-0918-04, Circuit Court of the First Circuit, State of Hawai'i (the Contested Case Appeal). The Contested Case Appeal arose from Plaintiffs' attempts to have BLNR reconvene the contested case. On December 22, 2014, the circuit court in the Contested Case Appeal (the Honorable Rhonda A. Nishimura presided), ordered BLNR to reconvene the contested case hearing and "address and resolve issues for which [BLNR] has sole statutory and constitutional responsibility and that are not duplicative of the issues to be determined by the Commission on Water Resource Management (CWRM) with respect to Appellant Nā Moku's pending petitions to amend interim instream flow standards for 27 East Maui streams."

[6] In a submittal for the May 25, 2001 meeting, the Land Division recommended that BLNR "authorize the issuance of separate water permits to [EMI] for the 'Honomanu [Honomanū], Huelo, and Keanae [Ke'anae] License' areas and [A&B] for the 'Nahiku [Nāhiku] License' area[.]"

throughout the state on an annual basis. The purpose of the annual review was for BLNR to "either approve or disapprove the continuation of existing revocable permits covering State lands on a month-to-month basis for another year with or without any changes in their existing rental rates." The list of revocable permits subject to review was attached to a staff submittal, which included a recommendation for BLNR's disposition of the listed revocable permits. On February 22, 2002, BLNR approved, as amended, the continuation of a list of revocable permits for an additional one-year period up to December 31, 2002. The A&B and EMI Revocable Permits were originally included in the list[7] but BLNR noted: "These permits are involved with the EMI Irrigation system that were holdover [sic] by prior action involving a contested case. The Board removed these permits from the list."

At a meeting on May 24, 2002, BLNR addressed the re-issuance of interim revocable permits to A&B and EMI.[8] The meeting minutes indicate that the Revocable Permits were brought back for review by BLNR because of "questions raised about authority to holdover permits beyond a year." Ultimately, BLNR again "deferred and granted a holdover of the existing revocable permits on a month-to-month basis pending the results of the contested case hearing" (2002 Holdover Decision).[9]

At a BLNR meeting on December 13, 2002, the staff submittal regarding the annual bulk review of temporary revocable permits noted that the A&B and EMI Revocable Permits "continue on a 'holdover' basis due to the ongoing contested case hearing." The list of permits subject to review for renewal did not include the A&B and EMI Revocable Permits.

Over the following two years, BLNR continued to leave

---

[7] On the February 22, 2002 list, prior to BLNR's decision to remove these permits from the list in their entirety, the Honomanū, Huelo, and Keʻanae permits remained assigned to A&B and the Nāhiku permit remained assigned to EMI.

[8] In its May 24, 2002 submittal, the Land Division recommended that BLNR "authorize the issuance of separate water permits to [EMI] for the 'Nahiku [Nāhiku] License' area and [A&B] for the 'Honomanu [Honomanū], Huelo, and Keanae [Keʻanae] License' areas[.]"

[9] The 2001 Holdover Decision and 2002 Holdover Decision are herein referred to collectively as the Holdover Decision or Holdover Decisions.

the Revocable Permits off the list of permits subject to review by BLNR. Then, at a BLNR meeting on November 18, 2005, the A&B and EMI Revocable Permits were placed back on the list of permits subject to review.[10] The staff submittal did not include any explanation as to why the Revocable Permits had been placed back on the list.

For each year since 2005, up to and including 2014, the A&B and EMI Revocable Permits were included on the list of permits subject to BLNR's annual review.[11] Each year that the Revocable Permits appeared on the list, BLNR collectively approved the continuation of all permits on the list on a month-to-month basis for a one-year period through the following December.

## B.    Procedural Background

The subject of this appeal is BLNR's approval of the continuation of the Revocable Permits in December 2014 (December 2014 Decision). Plaintiffs filed a complaint on April 10, 2015, and a First Amended Complaint (FAC) on April 20, 2015, in which Plaintiffs raised claims against State Defendants and A&B Defendants in relation to the December 2014 Decision.[12] The first count alleged that State Defendants violated HRS chapter 343 (2010 & Supp. 2014) by failing to either (1) declare that the renewal of the Revocable Permits were exempt from the preparation of an environmental assessment or (2) require A&B Defendants to prepare an environmental assessment. Similarly, the second count alleged that A&B Defendants violated HRS chapter 343 by failing to prepare an environmental assessment. Plaintiffs requested a declaratory judgment that: A&B Defendants and State Defendants violated HRS chapter 343; the renewal of the Revocable Permits may have a significant impact on the environment; the Revocable Permits are void, "provided that up to 8.4 mgd of water may still

---

[10]    On the November 18, 2005 list, the Honomanū, Huelo, and Ke'anae permits were assigned to A&B and the Nāhiku permit was assigned to EMI, the same assignments as originally reflected in the February 22, 2002 list.

[11]    For each of these years, the Honomanū, Huelo, and Ke'anae permits were assigned to A&B and the Nāhiku permit was assigned to EMI.

[12]    Defendant Maui County was named as an interested party.

be diverted and delivered to [Maui County] for the public health, safety, and welfare of existing customers served by East Maui surface water diversions"; and State Defendants or A&B Defendants must complete an environmental assessment. Plaintiffs also requested injunctions against A&B Defendants' continued diversion of water from the License Areas and State Defendants' issuance of permits authorizing use of the License Areas "until full compliance with HRS chapter 343 and approval of all necessary permits," except for the diversion and delivery of water to [Maui County] for the public health, safety, and welfare of existing customers.

On October 21, 2015, Plaintiffs filed a Motion for Partial Summary Judgment (Plaintiffs' MPSJ), requesting declaratory relief that: A&B Defendants and State Defendants violated HRS chapter 343; the Revocable Permits are null and void; A&B Defendants have no legal or statutory authority to continue using the License Areas; and State Defendants have no legal or statutory basis to authorize A&B Defendants' continued use of the License Areas.

On January 8, 2016, the circuit court entered its Order Granting Plaintiffs' MPSJ. The Order Granting Plaintiffs' MPSJ stated, in relevant part:

> 4. At issue in this lawsuit is the decision of the BLNR at its December 12, 2014 meeting to renew, *inter alia*, the [Revocable Permits] for a one-year period[.]
>
> . . . .
>
> 5. The State Defendants, DWS, and the A&B Defendants (collectively, "Defendants") argue that the decision of the BLNR to "continue" the Revocable Permits in December 2014 on a holdover basis is not an "action" under HRS § 343-5. Defendants argue that no [environmental assessment (EA)] was required. The BLNR's December 2014 decision to continue the Revocable Permits does not constitute an "action" subject to the EA requirements of Chapter 343.
>
> 6. Nevertheless, pursuant to HRS § 171-58(c), the BLNR authorized A&B's use on a holdover basis. This holdover status has continued uninterrupted for the last 13 years. HRS §§ 171-10[13] and 171-55 authorize the "temporary" occupation of public lands. A&B's continuous

---

[13] The circuit court's reference to HRS § 171-10 (1993) appears to be a typo as HRS § 171-10 defines classes of public lands and does not address any "temporary" occupation of public lands. Rather, it appears the circuit court intended to cite HRS § 171-40 (1993), which provides for "temporary" permits to extend expired leases.

uninterrupted use of these public lands on a holdover basis for the last 13 years is not the "temporary" use that HRS Chapter 171 envisions. See also Black's Law Dictionary, 10th edition. Otherwise, holdover tenants could arguably be allowed to occupy public lands almost in perpetuity for continuous, multiple one-year periods. Such a prospect is inconsistent with the public interest and legislative intent.

7. Plaintiffs' Motion is GRANTED. Revocable Permit Nos. 7263, 7264, 7265, and 7266 are invalid.

On January 19, 2016, Maui County filed an application for leave to take interlocutory appeal of the Order Granting Plaintiffs' MPSJ, and motion for stay of proceedings or enforcement of the order pending appeal. A&B Defendants and State Defendants filed joinders in Maui County's application to take interlocutory appeal. On February 2, 2016, the circuit court denied A&B Defendants' motion for rehearing on the Order Granting Plaintiffs' MPSJ. On February 5, 2016, the circuit court granted leave to Maui County, State Defendants, and A&B Defendants to take an interlocutory appeal of the Order Granting Plaintiffs' MPSJ.

A&B Defendants filed a notice of appeal on February 5, 2016. State Defendants and Maui County filed their notices of cross-appeal on February 8, 2016. Plaintiffs filed their notice of cross-appeal on February 16, 2016.

## II. POINTS OF ERROR

On appeal, A&B Defendants contend that the circuit court erred by: (1) granting Plaintiffs' MPSJ on Plaintiffs' claim that Defendants violated HRS chapter 343 despite determining that the renewal of the Revocable Permits did not constitute an "action" subject to HRS chapter 343; (2) granting Plaintiffs' MPSJ even though genuine issues of material fact existed as to whether the December 2014 Decision constituted an "action" within the meaning of HRS chapter 343; (3) exceeding its jurisdiction in ruling on the legality of the Holdover Decisions under HRS chapter 171, which was not an issue raised in Plaintiffs' FAC; and (4) declaring that the Revocable Permits were invalid based on the circuit court's determination that the Holdover Decisions were not a legal exercise of authority under HRS chapter 171, without considering BLNR's authority under the public trust doctrine.

7

In their respective cross-appeals, State Defendants and Maui County also argue that the circuit court erred in granting Plaintiffs' MPSJ on grounds that were not raised in Plaintiffs' FAC.

In Plaintiffs' cross-appeal, Plaintiffs argue that the circuit court erred in concluding that BLNR's renewal of the Revocable Permits do not constitute an "action" subject to HRS chapter 343. However, Plaintiffs' position is that the Order Granting Plaintiffs' MPSJ should be upheld, thus Plaintiffs only cross appeal in case this court vacates the Order Granting Plaintiffs' MPSJ.

## III. STANDARD OF REVIEW

### A. Summary Judgment

An appellate court reviews the circuit court's grant or denial of summary judgment *de novo*. Querubin v. Thronas, 107 Hawaiʻi 48, 56, 109 P.3d 689, 697 (2005). The Hawaiʻi Supreme Court has often articulated that

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawaiʻi 490, 501, 100 P.3d 60, 71 (2004)).

### B. Statutory Interpretation

> Statutory interpretation is "a question of law reviewable *de novo*." State v. Levi, 102 Hawaiʻi 282, 285, 75 P.3d 1173, 1176 (2003) (quoting State v. Arceo, 84 Hawaiʻi 1, 10, 928 P.2d 843, 852 (1996)). This court's statutory construction is guided by established rules:
>
> > First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or

8

> indistinctiveness or uncertainty of an
> expression used in a statute, an ambiguity
> exists.
>
> Peterson v. Hawaii Elec. Light Co., Inc., 85 Hawai'i 322,
> 327-28, 944 P.2d 1265, 1270-71 (1997), superseded on other
> grounds by HRS § 269-15.5 (Supp. 1999) (block quotation
> format, brackets, citations, and quotation marks omitted).
>
> When there is ambiguity in a statute, "the meaning of
> the ambiguous words may be sought by examining the context,
> with which the ambiguous words, phrases, and sentences may
> be compared, in order to ascertain their true meaning." Id.
> (quoting HRS § 1-15(1) (1993)). Moreover, the courts may
> resort to extrinsic aids in determining legislative intent,
> such as legislative history, or the reason and spirit of the
> law. See HRS § 1-15(2) (1993).

Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of City
and Cty. of Honolulu, 114 Hawai'i 184, 193-94, 159 P.3d 143, 152-
53 (2007).

## IV. DISCUSSION

We first address whether the circuit court erred in
granting Plaintiffs' MPSJ despite expressly ruling that the
renewal of the Revocable Permits did not constitute an "action"
subject to the requirements of HRS chapter 343. Instead of
denying Plaintiffs' MPSJ upon concluding that the December 2014
Decision was not an "action" subject to HRS chapter 343
requirements, the circuit court concluded that: (1) BLNR's
continuance of the Revocable Permits in December 2014 was done on
a holdover basis under authority granted by HRS chapter 171; and
(2) the continuance of the holdover status was inconsistent with
the public interest or legislative intent inasmuch as the
holdover was not "temporary" as envisioned under HRS chapter 171.
The circuit court granted Plaintiffs' MPSJ on the basis of HRS
chapter 171 and declared the Revocable Permits to be invalid.

Defendants argue that the circuit court erred in
granting Plaintiffs' MPSJ on this basis, as Plaintiffs did not
plead a claim under HRS chapter 171 in their FAC or Plaintiffs'
MPSJ. A&B Defendants cite to several cases out of our
jurisdiction in support of their contention that the circuit
court erred in granting Plaintiffs' MPSJ on grounds that were not
raised in Plaintiffs' FAC. The cited cases stand for the
proposition that a judgment by a court is limited to the relief
sought in the complaint, so that adequate notice of the claims is

9

provided against the defendant.  See, e.g., White v. Mazda Motor of Am., Inc., 99 A.3d 1079, 1088 (Conn. 2014); Rosenfeld v. Boniske, 445 S.W.3d 81, 89 (Mo. Ct. App. 2014); Medve Group v. Sombright, 163 S.W.3d 453, 456 (Mo. Ct. App. 2005); Holden v. Holden, 456 S.W.3d 642, 650 (Tex. App. 2015); Wetlands Am. Trust, Inc. v. White Cloud Nine Ventures, L.P., 782 S.E.2d 131, 143 (Va. 2016).

We acknowledge that the notice pleading standard is also well-settled law in Hawaiʻi.  See Bank of America, N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 263, 428 P.3d 761, 775 (2018) (clarifying and reaffirming that the well-established notice pleading standard governs in Hawaiʻi); Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawaiʻi 201, 215 n.17, 166 P.3d 961, 975 n.17 (2007) ("Hawaii's rules of notice pleading require only that a complaint set forth a short and plain statement of the claim that provides defendant with fair notice of what the plaintiff's claim is and the grounds upon which the claim rests[.]" (Internal citations, quotation marks and brackets omitted)).

Additionally, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Hawaiʻi Rules of Civil Procedure (HRCP) Rule 15(b) (2012).  The doctrine of trial by consent, established in Hawaiʻi by HRCP Rule 15(b), is also referenced in some of the cases that A&B Defendants cite to in their opening brief.  See Medve, 163 S.W.3d at 457 ("[The Missouri Rules of Civil Procedure] allow[] a party to amend the pleadings to conform to the evidence at trial if an issue not raised by the pleadings is tried by the parties' express or implied consent"); Holden, 456 S.W.3d at 651 ("An issue is tried by consent when both parties present evidence on an issue and the issue is developed during trial without objection.").

In this case, we note that HRS chapter 171 was not expressly pleaded as a basis upon which Plaintiffs' claims relied.  However, this does not necessarily establish that it was not raised to and tried by the circuit court.  The record

reflects that A&B Defendants argued in their memorandum in opposition to Plaintiffs' MPSJ that the "authority to use the [L]icense [A]reas derives from the Revocable Permits that were put into holdover status by virtue of the Holdover Decision of May 24, 2002." Similarly, State Defendants argued that the Revocable Permits were put into holdover status in 2001 and 2002, and that the status has not changed since. In other words, A&B Defendants and State Defendants argued that A&B Defendants' authority to use the License Areas and the ongoing validity of the Revocable Permits did not come from the December 2014 Decision, but instead derived from a continuance of the holdover status. It was in response to this defense that Plaintiffs asserted that the validity of the holdover status had expired after a year, pursuant to HRS chapter 171.[14] Thus, although the validity of the holdover status under HRS chapter 171 was not raised in Plaintiffs' FAC or Plaintiffs' MPSJ, the issue was still tried by implied consent and we construe the issue as if it had been raised in the pleadings.

We find no merit in Defendants' arguments that they were not on notice of any claim that the continuation of the holdover status of the Revocable Permits was in violation of HRS chapter 171. As noted, Defendants themselves raised the issue of whether the continued validity of the Revocable Permits derived from the holdover status established by the 2001 and 2002 Holdover Decisions. In doing so, Defendants had the opportunity to raise their arguments regarding HRS chapter 171, and in fact did so.[15] Given this fact, Defendants cannot now maintain that

---

[14] Plaintiffs clarified, at multiple instances throughout the hearing on their MPSJ, that the purpose of the instant action was not to litigate the validity of the Holdover Decisions themselves. Rather, Plaintiffs asserted that Defendants could not rely on the _continued_ validity of the holdover status arising from the original Holdover Decisions in 2001 and 2002 because "the holdover, even if valid for a time, had a termination date dictated by the plain terms of the statute governing holdovers [(HRS chapter 171)] and conferring the BLNR with the authority to dispose of public lands and resources in that manner."

[15] The parties presented their arguments on this issue at the hearing on Plaintiffs' MPSJ, held on November 24, 2015. Notably, at the hearing, A&B Defendants pointed out that the issue of the continued validity of the holdover status was "absolutely [at issue] because what [Plaintiffs are] asking the Court to do is to make a ruling that . . . there's no current authority for the A&B Defendants to continue using the licensed lands" and that "the issue of whether [the Holdover Decision] still has vitality is of course in play in this proceeding . . . ."

11

there was a lack of notice or a lack of opportunity to refute their own legal argument.

We conclude that Defendants had sufficient notice and indeed tried the issue of the ongoing validity, under HRS chapter 171, of the holdover status of the Revocable Permits. Accordingly, we conclude that the circuit court did not err in relying on HRS chapter 171 as a basis for its decision to grant Plaintiffs' MPSJ.

We next address whether the circuit court erred in ruling as a matter of law that the continuation of the holdover status of the Revocable Permits was in violation of HRS chapter 171. The Revocable Permits expressly stated that they were issued pursuant to HRS § 171-58, which governs BLNR's authority to make dispositions of water rights. At the time the Revocable Permits were issued, HRS § 171-58 (1993) provided, in relevant part:

> (c) Disposition of water rights may be made by . . . permit for temporary use on a month-to-month basis under those conditions which will best serve the interests of the State and subject to a maximum term of one year and other restrictions under the law[.]

(Emphasis added.) Thus, under HRS § 171-58(c), BLNR had no authority to extend the Revocable Permits past the first year, ending on July 1, 2001. Accordingly, we must determine what authority, if any, BLNR acted under when it placed the Revocable Permits in holdover status and thereafter continued to maintain them in holdover status.

"The provisions of Chapter 171, Hawaii Revised Statutes governs the management and disposition of public lands by [DLNR] and [BLNR], and circumscribes, in detail, the disposition of such lands." Big Island Small Ranchers Ass'n v. State, 60 Haw. 228, 237, 588 P.2d 430, 436 (1978). "The provision for disposition only of single specific uses [(e.g. water)] was incorporated so that the State may benefit from a widely diversified utilization of its land." Id. at 237, 588 P.2d at 437 (quoting SCR No. 240, H.B. 244 (1962)).

When BLNR first placed the Revocable Permits in holdover status at the May 25, 2001 meeting, HRS § 171-55 (1993) provided:

> <u>Notwithstanding any other law to the contrary</u>, the board of land and natural resources may issue permits for the <u>temporary occupancy of state lands</u> or an interest therein on a month-to-month basis by direct negotiation without public auction, <u>under conditions and rent which will serve the best interests of the State</u>, subject, however, to those restrictions as may from time to time be expressly imposed by the board. A permit on a month-to-month basis may continue for a period not to exceed one year from the date of its issuance; provided that <u>the board may allow the permit to continue on a month-to-month basis for additional one year periods</u>.

(Emphases added.)[16] We conclude that HRS § 171-55 authorized BLNR to place the Revocable Permits in holdover status "notwithstanding any other law to the contrary"[17] (i.e. the "maximum term of one year" prescribed by HRS § 171-58). However, HRS § 171-55 requires that the permit holder's occupancy be "temporary." The record indicates that BLNR originally approved

---

[16] Plaintiffs' Answering Brief concedes that the legislative history of Revised Laws of Hawaii (RLH) § 103A-52, the predecessor statute to HRS § 177-55, explains that the legislature

> intended that a permit on a month to month basis shall be for a duration of one year <u>unless extended by the board</u>. At the end of each year, if the permit on a month to month basis is <u>extended for another year</u>, the board approval must be had.

H. Stand. Comm. Rep. No. 522, in 1967 House Journal, at 670 (emphases added).

[17] The Hawai'i Supreme Court discussed the phrase "notwithstanding any other law to the contrary" in <u>State v. Dannenberg</u>, 74 Haw. 75, 837 P.2d 776 (1992). That case involved HRS § 712-1200, which at that time provided, in relevant part:

> <u>Notwithstanding any other law to the contrary</u>, a person convicted of committing the offense of prostitution shall be sentenced as follows: [for the first offense, a fine and a discretionary prison term of not more than 30 days; for a subsequent offense, a fine and a prison term of 30 days without possibility of suspension of sentence or probation.]

<u>Id.</u> at 79-80, 837 P.2d at 778 (some emphasis omitted). Dannenberg was a mandamus proceeding from a prosecution for prostitution. In that case, the trial court had granted the defendant's motion for a deferred acceptance of no contest (DANC) plea. The State petitioned for a writ of mandamus to enjoin enforcement of the DANC order. The supreme court first noted that a trial court ordinarily has discretion, under HRS chapter 853, to grant or deny a motion for a DANC plea. <u>Id.</u> at 79, 837 P.2d at 778. The supreme court then reaffirmed its decision in <u>State v. Rice</u>, 66 Haw. 101, 657 P.2d 1026 (1983), that the phrase "notwithstanding any other law to the contrary" in HRS § 712-1200 had the effect of "taking away the trial court's power [under HRS chapter 853] to grant deferred acceptance of guilty pleas in prostitution cases." <u>Dannenberg</u>, 74 Haw. at 80, 837 P.2d at 778 (original brackets omitted) (quoting <u>Rice</u>, 66 Haw. at 102, 657 P.2d at 1026).
  In response to Dannenberg, the 1993 legislature amended HRS § 712-1200(4) to allow for the acceptance of DANC pleas by eliminating the phrase "notwithstanding any other law to the contrary." <u>State v. Hamili</u>, 87 Hawai'i 102, 106 n.5, 952 P.2d 390, 394 n.5 (1998). This "indicates that the legislature is aware of the meaning of that phrase 'notwithstanding any other law to the contrary,' and is able to act accordingly." <u>State v. Casugay-Badiang</u>, 130 Hawai'i 21, 36 n.4, 305 P.3d 437, 452 n.4 (2013) (Recktenwald, C.J., dissenting).

a holdover permit "on a month-to-month basis, pending the results of the [Nā Moku] contested case hearing" on the Lease Application. Plaintiffs contend, however, that by the time of the December 2014 Decision, BLNR's annual renewals of the Revocable Permits were in fact not "temporary" because BLNR's failure to resolve the contested case – which has now been pending for 18 years – means the holdover "lasts indefinitely" and "endures indefinitely and immunizes BLNR from having to ever comply with HRS chapter 343."

In its Order Granting Plaintiffs' MPSJ, the circuit court held that

> A&B's continuous uninterrupted use of these public lands on a holdover basis for the last 13 years is not the "temporary" use that HRS Chapter 171 envisions. Otherwise, holdover tenants could arguably be allowed to occupy public lands almost in perpetuity for continuous, multiple one-year periods. Such a prospect is inconsistent with the public interest and legislative intent.

(Citation omitted.) Whether or not BLNR's December 2014 Decision to continue the holdover status of the Revocable Permits was "temporary" or de facto indefinite under the circumstances of this case presents a genuine issue of material fact that should not have been resolved by summary judgment.

HRS § 171-55 also requires that the permit holder's occupancy be "under conditions and rent which will serve the best interests of the State." The record contains some indication that the annual continuation of the holdover status serves the best interests of the State. For example, Maui County contends that it uses some of the diverted water to supply "domestic and pastoral" water users located in upcountry Maui.[18] Plaintiffs, however, contend that A&B Defendants' continued diversion of water from East Maui streams is "causing significant harm to stream life and traditional cultural practices with the sanction of the BLNR." Thus, whether or not BLNR's December 2014 Decision to continue the holdover status of the Revocable Permits "will serve the best interests of the State" also presents a genuine issue of material fact. We therefore conclude that the circuit

---

[18] Plaintiffs concede that allowing the diversion and delivery of water to Maui County is in the State's best interest by excepting this use from Plaintiffs' request to invalidate the revocable permits.

14

court erred in resolving these issues under HRS § 171-55 by summary judgment.

In light of this conclusion, we must now address Plaintiffs' cross-appeal and determine whether the circuit court erred in concluding as a matter of law that the December 2014 Decision did not constitute an "action" subject to the requirements[19] of HRS chapter 343.

As discussed *supra*, HRS § 171-55 provided BLNR with the authority to place the Revocable Permits in holdover status "notwithstanding any other law to the contrary." We conclude that just as this language served to nullify the maximum term of one year prescribed by HRS § 171-58, it also nullified HRS chapter 343 EA and EIS requirements for temporary permits issued under HRS § 171-55. Further, we interpret the purpose behind HRS § 171-55 as allowing BLNR to issue a temporary permit in the interim while a permittee pursues a long-term lease, for which an environmental review process under HRS chapter 343 must be undertaken.

We therefore conclude that the December 2014 Decision was not subject to the EA/EIS requirements of HRS chapter 343 and, although the circuit court gave different reasons for its ruling, the circuit court did not err in concluding that HRS chapter 343 was inapplicable to this matter. See Reyes v. Kuboyama, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994) ("[W]here the circuit court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling.").

---

[19]    HRS chapter 343 is commonly referred to as the Hawai'i Environmental Policy Act (HEPA). HEPA establishes "a system of environmental review which will ensure that environmental concerns are given appropriate consideration in decision making along with economic and technical considerations." HRS § 343-1 (2010). HEPA requires projects that meet certain criteria to prepare an EA or environmental impact statement (EIS).

## V. CONCLUSION

For the foregoing reasons, we vacate the January 8, 2016 "Order Granting Plaintiffs' Motion for Partial Summary Judgment, Filed October 21, 2015" and remand this case to the Circuit Court of the First Circuit for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, June 18, 2019.

On the briefs:

David Kimo Frankel,
Summer L.H. Sylva,
and Camille K. Kalama,
for Plaintiffs-Appellees/Cross-
Appellees/Cross-Appellants.

David Schulmeister,
and Elijah Yip,
(Cades Schutte),
for Defendants-Appellants/Cross-
Appellees.

Caleb P. Rowe,
and Kristin K. Tarnstrom,
Deputies Corporation Counsel,
County of Maui,
for Defendant-Appellee/Cross-
Appellant/Cross-Appellee.

William J. Wynhoff,
and Linda L.W. Chow,
Deputy Attorneys General,
for Defendants-Appellees/Cross-
Appellees/Cross-Appellants.

Presiding Judge

Associate Judge

Keith K Hiraoka

Associate Judge